Case No. 18-1461, Terrence Williams v. Sherry Burt, argument not to exceed 15 minutes per side, Ms. Yahara Dubin, you may proceed for the appellant. Good morning. Good morning, Your Honors, and may it please the Court. My name is Yair Dubin, and I represent the appellant, Terrence Williams. I'd like to reserve four minutes for rebuttal. The trial put here a completely closed courtroom to the public during the most critical days of Mr. Williams' trial. For the testimony of two witnesses who are indisputably the most important witnesses for the prosecution's case. The Supreme Court has been perfectly clear on what a court needs to do to deprive a defendant of the right to a public trial, identify an overriding interest, and explain why the closure is no broader than necessary and no reasonable alternatives exist. The trial court did not do that here. It is true that Mr. Williams' trial counsel failed to object. But Mr. Williams has carried his burden to overcome that default. Trial counsel is egregiously deficient, and his unprofessional representation was actually prejudicial. I'd like to discuss that with the Court and answer any questions you might have on that. But before we turn to prejudice, I'd like to briefly discuss the constitutional violation itself. First, this wasn't a minor intrusion on the public trial right. The judge closed the courtroom entirely to the public during the testimony of the government's two key witnesses, Jerry Lewis and Cornelia Swear, for a total of five days of trial testimony. Well, what do we do with the – what I think is the reality that this state court judge was – this was not a problem that just appeared suddenly. This was a problem that was appearing and seemed to be exacerbating over time. And the trial judge, it seemed to me, was trying incrementally to figure out what to do, talking to counsel, how to handle this. So I don't feel like it's a case where all of a sudden this comes out of the blue. I think the trial judge said it was the hardest case he'd ever seen in this particular sentence. And it seems to help a little or ameliorate a little bit the perhaps failure to take measures that have been taken in other cases. Am I wrong about thinking about it that way? Sure, Your Honor. I don't think you're wrong as an overarching matter that if there's a bunch of incidents that all lead up together to a trial court, you need to close the courtroom. That couldn't be done in certain cases. That's simply not what happened here. And I'd actually first like to focus the court's attention on Mr. Ware. For Mr. Ware, the court specifically ruled that the courtroom should be reopened. So in the court's own estimation, the prior instance did not mean that Mr. Ware's testimony should happen in a closed courtroom. Once the judge was informed that the court deputies were anyways keeping the courtroom closed, she simply allowed the courtroom to remain closed without justification for another hour of Ware's testimony. Then, after a break, she stated that a closure would continue for all of Ware's testimony because of unspecified concerns about transporting an incarcerated witness. So for Mr. Ware, Mr. Williams' public trial right was first violated by mistake, then with no justification at all, and then finally based on a post-trial rationale that applies in countless trials across the country every day. So the trial judge isn't able to rely on comments from the security staff that there's some security concern that might require the courtroom being closed? Your Honor, if there were some specific security concern related to Mr. Ware, it was never really on the record and we don't know it. And that doesn't satisfy all of us. So in any case, your real problem is that the judge didn't articulate the reasons. And there aren't any… Well, there might be some reasons why the courtroom was closed, but the judge didn't articulate them. Sure, but it's not just that she didn't articulate them. They're not apparent on the record. Even if you were to comb through the whole record, you wouldn't see any reasons other than a generic concern about transporting incarcerated witnesses, which the Supreme Court has made clear in Presley, generic concerns that would apply in many, many cases don't constitute… That was the back-end closure. The front-end closure was all the animosity in the courtroom. Yes, so let's talk about Mr. Lewis and the closure that happened during his testimony. The closure that happened during Mr. Lewis' testimony was precipitated by incredibly inappropriate remarks by trial counsel. And the court's interest in rating and counsel certainly didn't justify closing the courtroom for that. But Your Honor's questions, which are, what about the other incidents that precipitated that closure beyond what happened with trial counsel? Plus intimidation coming from other people, not just counsel. Sure. So, Your Honor, the trial court left the courtroom open for the first day and a half of Mr. Lewis' testimony. So her view was that the prior instance in the courtroom did not require closing the courtroom for the first day and a half. It was only after the defense counsel instance that she decided to close the courtroom. So we already know, in her own opinion, that the other instance of intimidation did not apply to Mr. Lewis and to his testimony. I think if you even move beyond that and look at what those incidents were, the incidents were about witness tampering. They were about training and coaching witnesses, such as defendant's mother and defendant's aunt. They were not incidents of intimidation, other than the one the trial court directly rebutted on the record relating to Cook. And even if you move beyond what sort of happened with those particular incidents, none of them had anything to do with Lewis. And this court has been repeatedly clear that the particular incidents you're concerned about have to have something to do with the witness that's testifying on the stand, which they didn't here. So your main complaint is that counsel didn't object to closing the courtroom. Was there legitimate reasons why counsel may have thought it was better for his client to close the courtroom? Maybe they would keep, for example, the family of the victim out of the courtroom, which could have influenced the jury? There might be some other factors. No, Your Honor. And I'd like to just look a little bit at what counsel did here, because I think it's really important for us to understand why he was so deficient in answering your question. Counsel below wasn't just ineffective. He was egregiously unprofessional, judged by any standard of lawyering. He was unprofessional. I mean, your harm is the closing of the trial. The unprofessional might agree he was unprofessional, but the harm is his failure to object, right? And that's what we're supposed to look at in terms of the deficiency of his performance that would have harmed. There's no public trial. If the trial's not closed, it doesn't matter all that much whether he was looking at people the wrong way. So it's 100% right that the deficiency that we care about is the failure to object to the closure of the courtroom. But I think you need to look at it through what happened, because he failed to object to what happened into the closure because he had a conflict. He had a conflict because the right result there was to sanction trial counsel. He wasn't just looking at the witness the wrong way. He was accusing and intimidating a witness on a stand, which, as we all know, is totally incorrect. It's inconsistent with a lawyer's duty to the court. And when he's faced with that situation where the appropriate remedy is to sanction counsel or kick counsel out, to then say that counsel had a reasonable strategic reason for failing to object doesn't seem right. And I think beyond that, if you look at what actually happened in this case and what the reasonable strategic decision could have been, in this case—and this will bring us a little bit into prejudice, which I'm happy to talk about— This is— Good idea. Yeah. This is a case where it really mattered. This is a case where closing the courtroom really, really mattered. And I want to talk about the— You should just set the timeframe. I mean, this was a quite long trial, right? And the courtroom was closed for one witness and, in part, less than half of another witness, just to ensure the timeframe, right? Most witnesses testified in public, and one of the two witnesses who was affected by the closure, most of his testimony was in public. Sure, Your Honor. So with respect to Lewis, he testified on the afternoon of the 28th, the full day of the 29th, and half the day of the 30th open, and that was all during direct testimony and during his cross-examination on the afternoon of the 30th, and then the 4th, the 25th, and the morning of the 6th all was closed. Now, with respect to Mr. Ware, the entire testimony was closed. But for the long trial, the long trial where, retrospectively, a short period of it was closed, you're saying those were four witnesses, but what is the prejudice? Sure. And I think the Supreme Court in Weaver's discussion of prejudice is actually really helpful to understanding this. The Supreme Court in Weaver specifically contemplated that a defendant can establish prejudice in certain circumstances. It declined to put a presumption of prejudice, but said that there are circumstances where a defendant can show prejudice. And at page 1913 of the Court's opinion, the Supreme Court says, in other circumstances, a different result can obtain. If, for instance, defense counsel errors in failing to object when the government's main witness testifies in secret… Just slow down. Just slow down. Sure. If, for instance, defense counsel errors in failing to object when the government's main witness testifies in secret, the defendant might be able to show prejudice a little more. And here it's more than just the government's main witness. It's the government's main witnesses. This is a case where there wasn't a lot of other evidence. The prosecution's case rested on the testimony of Lewis and Ware. So if I start with threshold points, do you agree we should apply Weaver? Because Weaver, of course, was a case that happened. But the issue there was why not? And do you agree that we should apply that analysis to a partial closure during the heart of the trial? A full closure, Your Honor. Everyone was excluded. It was a full closure. A partial full closure. Not a full closure. Or a full partial closure. Sure. But I just wanted to reiterate, it wasn't that the local press was allowed in, the victims' family. No, it was allowed in. So what was the harm? Lewis testified in public, he testified in private, he testified across both contexts. He said the same thing the whole time. So your argument is that had the entire trial happened in the full public eye, he would have testified differently? That there's a reasonable probability he would have testified differently. And I think, I mean, you have to – Because he also could have continued staring at him and threatening him? To be clear, I think that there was a serious problem with trial counsel. This might have been a situation where you need to sanction counsel or do something with respect to counsel. Other people in the public part of the courtroom. That's what's so weird about this. I don't understand what prejudice is. It seems to me it's only reserved for close cases. I guess that's all I can think of. Because it's very hard to put your finger on how it being public or not public changes the testimony. You have to assume they're following their oath, right? A couple of points of response to that, Your Honor. First of all, it was a close case. Joe Green, the alleged shooter, was not convicted by his jury. So it was a close case. Beyond that, I want to go to what happens with the public trial right. The public trial right does two things. It protects the public's right for information to see justice done. And it serves as a crucial part of the search for truth. Along with the oath and cross-examination, the public trial is supposed to get to truth. It's a truth-seeking mechanism because – But if being public makes it more likely to be truthful, is that your point? Yes, and the Supreme Court has said that multiple times. And more than the oath. And they say the oath is not enough to make sure they're telling the truth. Correct, Your Honor. That is a mean purposeful public trial. I think the Supreme Court discussion in Henry Oliver is illuminating on this point. So it's almost like a confrontation clause idea. That if you have to say in front of all these people, it increases the odds that it's truthful. In front of your community and in front of the public. It's a crucible of truth-telling. And the hard part for me is that happened for Lewis. Virtually all – most of the testimony wasn't in public. And he said the same thing when it was closed. And that testimony is quite harmful to your client. And so now you're saying that if it had all been in public, you would get a different testimony. Yes, I think that's your argument. And I – it's a little hard to see why. Sure. And with your – I would like to pause and talk about both of those two and why we think that they might have given different testimony and why the adjustment is so important. For Mr. Lewis, as you've been mentioning, his testimony was what it was at the trial. He recanted an affidavit filed in state court. And there's reason to doubt that he would have given the same testimony when it was cross-examination, which itself is meant to go to truth, as I was just discussing with Judge Sutton, plus the public trial, right? And with Mr. Ware – I don't believe that part of that was done in public. Only the direct examination. None of the cross-examination was done in public and extended for two and a half days. And the point of cross-examination is to get to a witness' credibility, and it didn't happen in the public as it's supposed to be. And that – and most of that closure had no justification, right, because the trial's initial justifications were only for the first afternoon of Mr. Lewis' testimony. So let me just – maybe this is a question for Roboto. When I'm struggling with – absent the really close case situation, like data can get really close cases could have made a difference. If it's not such a close case – and let's put that to the side, whether – which basket this case falls into. But imagine a case that's not that close. I just have a very hard time calculating how the prejudice works. I mean, it seems to me it's either structural because this always messes up the truth-seeking process, but it's just – I just don't know how to examine it. Anyway, that's what I'm struggling with, with how we can measure the prejudice. I can't put my arms around it. Can I offer a brief response? Yeah, if you have a great answer, I'll take it. I claim that it's brief, but I hope that it's great. Your Honor, we were specifically faced with this question. One side was arguing presumed prejudice, and one side was saying, you can't show actual prejudice. And the court didn't pick either of those options. The court said you can't presume prejudice, but in certain cases you can show prejudice. And to Your Honor's question about the close case, this case – You've got me on the close case so that you've got that victory. But I don't know what to do with the not-so-close case. And I think you would say, no, you have to be careful here. You have to look at how many days and all this other stuff. And I'm just like, how do I know why this witness testified the way they testified, whether it was an oath issue, no witnesses in the jury dock, or in the courtroom or not? How can I figure that out? Sure, and I think the key to your question is taking these two witnesses whose truth-telling is in question because of the public trial rate. Absent that, is it a close case? Absolutely. Here was no other evidence other than the two witnesses. So then the question is whether those two witnesses were telling the truth in an early manner. And if you think the answer to that question is yes, that's an actual prejudice question. All right. All right, thank you. Here from the other side. Good morning, Your Honors. Inmate Police Department. Assistant Attorney General Skouch. I'm disappearing on behalf of the respondent to share your words. Your Honors, Petitioner Williams is not entitled to police relief for his convictions for murder and assault for two simple reasons. First, because his claim, his courtroom closure claim, is procedurally defaulted because counsel did not object during the trial. And that default is too straightforward to skip over, as this court proclaimed in Stalling v. Berg. The second reason is because Williams cannot establish ineffective assistance of counsel to excuse that default, especially in a case like this where ad podeferens applies. But even if this court were to reach the merits of the issue, fair-minded jurists could disagree about whether the courtroom should have been closed and whether the Michigan Court of Appeals' decision that that was justified was wrong. Well, is it the issue not whether the courtroom should have been closed, but whether the judge gave a sufficient explanation for why the courtroom was closed? Absolutely, Your Honor. And in this case, the trial judge – it's hard to fathom that there could have been a more elaborate record created in this case. As we see from the Michigan Court of Appeals' opinion in this case, the block votes from the court were pretty extensive because the court outlined exactly what could happen in the days leading up to the closure in this case. But does the court go through all the options and the lesser measures and the explanation of exactly why we're doing this now? I thought that was a little deficient. So in terms of what the court could have done, the court outlined what it had already considered that were not working. The court had outlined the number of times it had to admonish people in the gallery. We had a witness – the first problem came up that one witness was scared to testify. The next day, the same witness was still scared to testify and actually changed his testimony because he was scared to testify. Then we had an incident of coaching. The third problem came up was more coaching. There's a record of problems. Correct. Let's ask it this way. Why did the trial court end the closure? What was the justification? You're saying there was an articulated basis for starting the investigation. What was the basis for ending it? So it would seem that the basis for ending it is that Ware was done testifying, and at that point, as Your Honor pointed out, the security concerns were at least mitigated at that point because this incarcerated person was done testifying. The word seem that you used seems sort of formative because the judge had an obligation to articulate what he was doing. That's a pretty critical feature of the public. The second trial right is that the judge has to explain what he's doing. If you explain why he started it, it's pretty unclear why he stopped. So Your Honor, I think the distinction there is that there's no – there's at least no constitutional requirement that – there's no articulated reason as to why the courtroom was re-opened. There certainly need to be articulated reasons about why the courtroom was closed, but there's no constitutional requirement from the U.S. Supreme Court that says why. We need articulated reasons. The courtroom has to be closed for an articulated purpose, and there are other means that are rejected. So purpose should have been obvious that we're going to go forward with this in half, and here's three reasons why. I don't think the judge said that. Well, I do think the court – the trial court left the decision open essentially. So the court said we're certainly going to close the courtroom for today. We might close it for the remainder of the trial. I don't know yet, but we'll see sort of how it goes. And I think it helped too that having the courtroom closed, that meant the problems had dissipated. So the court felt comfortable re-opening the courtroom after Mr. Ware's testimony. The security concerns were over. Mr. Ware was done, and now they could bring the gallery back. And by all accounts, based on the record, there weren't the same kinds of problems coming up after that point that there were before. So there were all these problems leading up to the closure, and then after the courtroom was cleared, the two – the one witness in which the problem came up and then the following witness who had security concerns were done. Now the public can come back in, and again, by all accounts, there were no problems after that because the courtroom certainly wasn't closed again. And there have been no issues in terms of other outbursts or anything along those lines. But going back to the – So let's assume a procedural default and say you're right about that. I said that gets you to cause some prejudice. And I heard you say that you take – you're arguing that the state court decision on ineffective assistance gets added to deference here. What's the case for that? Because I think we've got competing lines of authority on that point. So the – it gets deference really under the statute that this was a merits adjudication. And furthermore, Your Honor, we have Stewart that says an alternative plain error analysis gets deference, which we have for the closure issue. But on the ineffective assistance issue, that was a separate issue that the Michigan Court of Appeals considered on its own in full, and they determined that there was no deficient performance and there was no prejudice. And because those are merits determinations under 28 U.S.C. 2254d, that says – Is there a state court decision on that point? I admit that I can't – I don't have a specific case, Your Honor. But the body of law for – or excuse me – for AEDPA cases says that if there is a merits determination, then that – I know the Blackwater principle. My sense is we have competing lines of authority on that, and I'm just not sure of the right answer. So, Your Honor – and you can certainly correct me if I'm wrong. But what we may be alluding to is the fact that opposing counsel points out that there was a merits determination on the deficient performance prong but not on the prejudice prong. But we would disagree with that, that there was a merits determination on both of those issues and that the body of law here says that because those were both merits determinations, those both get AEDPA deference. And because – Let's talk about prejudice and just assume for the sake of argument it doesn't get AEDPA deference. So just talk through that. So in terms of prejudice, Your Honors, in counsel's argument, we're absolutely right. The prejudice here is difficult to calculate, but it is not impossible because we have to look at what the – what the situation was, what the evidence presented was. You agree that if it's a really close case that this would be the kind of thing that could tip the balance, and that's one way to think about it? As opposed to examining the actual conduct of who testified and so forth. I suppose my answer is yes and no. So in a close case, you would still – I guess in either case, you need to look at the circumstances surrounding how long the closure was, possibly who was testifying during that closure, the reasons for that closure, and the other evidence that was presented in the case. I think those factors – it doesn't necessarily matter whether it's a close case or easily one way or another. But I would also argue if it is a close case, then where do we have AEDPA deference applying? That means – No, I want to go down this road without AEDPA. Sorry, no crutches. No, that's all right. Because to be honest, Your Honor, I don't think we need AEDPA deference in this case, but I just – I do want to make sure that our point is clear that it should apply. But even if it didn't, especially for the AEDPA consistency, there is just no crutches. The – how do you deal with the evidence of Lewis making his recantation later that that suggests perhaps he wasn't telling the truth? And so if it were an open trial, perhaps he would have testified differently. So, Your Honor, I guess I have a few responses to that. One is that this affidavit that counsel is pointing to is not part of this record. That affidavit has been filed in the state trial court. That will be litigated there, and then if there are any issues arising from that litigation, then Mr. Williams will have to file a second or successive petition and get approval for that from this court for that to be litigated. That is not part of this case. But even if it was, even if we're thinking, well, maybe Mr. Lewis has this affidavit that recants his testimony, as Judge Ridley pointed out, the fact is Mr. Lewis had testified for two days before the courtroom was closed. He was halfway through cross-examination when the courtroom closed. So the public had his full direct testimony, at least half of his cross, and then even during the rest of his cross, obviously the juries were there. And so there just is no reasonable probability that his testimony would have been different if the public had been there. And furthermore, Your Honors, the allegations at trial were that they were trying to intimidate Mr. Lewis. Is there anything in the record as to who was present in the courtroom in terms of – was Mr. Lewis given testimony about individuals who were present in the courtroom? Are you referring to before the courtroom was closed? Both, I guess. I'm not sure that the record specifically says that he was giving testimony. I mean, certainly he was giving testimony against Mr. Williams and Mr. Green. Yeah, I guess the point is, is there someone who was excluded? Is there anything in the record that indicates someone was excluded from the audience when the courtroom was closed who was a subject of Mr. Lewis' testimony or he mentioned in his testimony? I suppose I don't recall that being in the record. I could be wrong, but I don't recall anything that his testimony related to people in the gallery, other than obviously his testimony related to the defendants. And what about for Ware? I believe it's the same case because Mr. Ware's testimony was specifically related to Mr. Williams because he's the one who was in jail with Mr. Williams and obtained this confession. But again, as far as I know, Mr. Ware didn't have any testimony related to anyone in the gallery. But I also think that's sort of a separate issue if it's an issue at all. The question here is whether there was prejudice stemming from the absence of the public from the courtroom. And Mr. Williams simply has not shown that. And Mr. Williams wants to point out, well, there was no other evidence besides Mr. Lewis' testimony or Mr. Ware's testimony. That was the heart of this case. That was the only thing. Without that, the prosecution falls apart. But that is simply not the case. Multiple witnesses testified to seeing this blue minivan that was where the firing came from. That van was found burned in a lot. It had a door missing. That door was at the scene of the crime. The door matched to the van. The van was registered to Mr. Greene's and Mr. Williams' mother. We have a – Can I take you back to Ineffective Assistance? Sure. Your friend on the other side says that counsel was conflicted, and that may explain why he didn't object to this. Right. It's pretty well established. I mean most lawyers probably would be familiar with public trial, right? What's your response to that? I think – correct me if I'm wrong. Please, Judge Raylor. But I believe he would point out that perhaps counsel wanted this closure because of all these problems that had been happening. In fact, we know on January 28, 2008, that Mr. Williams' counsel asked for someone from the gallery to be objected from this case because he suspected or perhaps knew that there was some untoward influence going on. But I think the theory is – as I understood it, the counsel would have wanted the closure because he risked being sanctioned. And the fact that the court was going with the closure instead of going after him individually went to his benefit. So I think two things for that, Your Honor. One is that my understanding is now that that's Mr. Williams' claim, that because the counsel was somehow deficient because he was trying to curry favor for himself versus sort of at the expense of the public. And second is because counsel here – like I said, he may have wanted the closure. But with the closure, it also gave the trial judge an opportunity to make sure that their attention was on the parties, on the defendants, on the witness, on the juries. Because with all these disruptions, the court had mentioned at the time that they closed the courtroom that the night before when the court had left, the judge had left, she said it was chaos. She was pointing out that with all these disruptions, now her attention is divided too. Her attention has to be on the gallery where all these disruptions are and to the parties right in front of her. But now with the gallery and all those disruptions gone, she can focus on the parties, which could be as part – not part of the alternative, but part of the calculus for why she may not be sanctioned defense counsel. But why excluding the public was at least part of that calculus so that she can focus on what's in front of her. And so like I said, going back to the evidence, we also had evidence of fuging in this case. There was stipulation that Williams had shot Lewis before. There was evidence of witness intimidation that came not just from Lewis. How do you explain the split verdicts? So my response to that, Your Honor, is Mr. Green was convicted after retrial. So just so the record is clear, it's not that Mr. Williams was just acquitted and everything was done after that. In some ways, the better measure is the common denominator, which is the trial that they both participated in. In terms of both being convicted, you mean, Your Honor? No, no. I thought that they were both part of one trial. One was convicted in one trial. Correct. There was one trial, but it's also important to point out that there were separate juries in this case. This wasn't the same jury who convicted Mr. Williams but acquitted Mr. Green. I shouldn't say acquitted. There was a hung jury, and that's why we have it.